DOCKET NO. 1:16-cv-10983-IT

LAURENCE BROWN,
                        Plaintiff,

    v.

MAURA HEALEY, ATTORNEY GENERAL OF
THE COMMONWEALTH OF
MASSACHUSETTS,
                        Defendant.

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
### OF HER MOTION TO DISMISS

## I.     INTRODUCTION

On November 14, 2016, plaintiff Laurence Brown ("the plaintiff"), representing himself,

filed an Amended Complaint arising out of the 2011 denial, by the Bridgewater Chief of Police,

Christopher Delmonte, of the plaintiff's renewal application for a Class A license to carry

("LTC") a firearm,. *See generally Am. Compl.* According to the plaintiff, that denial has worked

a deprivation of the plaintiff's Second Amendment rights and "possibly" his Fourteenth

Amendment rights as well. *See Am. Compl.*, pp. 50-53. The plaintiff asks this Court to determine

that "Massachusetts' case by case discretionary firearms licensing laws are unconstitutional . . ."

and seeks a declaration that "the Second Amendment defines a right, not a privilege, and that

police chiefs do not hand out enumerated [c]onstitutional rights." *See* Am. Compl., p. 53.

This Court should dismiss the plaintiff's action. The claims plaintiff raises, as to the

denial of his LTC renewal application and the relief he seeks, *already* have been rejected at every

level of the Massachusetts judicial system. Indeed, the District Court, Superior Court, and

Appeals Court all have affirmed the denial of the plaintiff's application on the grounds that the plaintiff is an unsuitable person to possess a Class A firearms license and the Supreme Judicial Court has denied the plaintiff further appellate review. These courts have also rejected his constitutional arguments. Having lost his case in prior state court proceedings, the plaintiff is precluded from mounting in the federal court yet another attack on the issues that already have been decided, fully and finally, against him. The Amended Complaint should be dismissed based on res judicata principles, the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and because the First Circuit, in *Hightower v. City of Boston*, 693 F.3d 61 (1st Cir. 2012), has already rejected, on the merits, the constitutional challenge the plaintiff mounts.

## II. STATUTORY BACKGROUND FOR MASSACHUSETTS FIREARMS LICENSING

"An individual who lawfully wants to carry a firearm[] within the Commonwealth either must obtain a license to do so pursuant to G. L. c. 140, § 131, or be exempt from the statutory licensing requirements . . . 'The historical aim of licensure generally is preservation of public health, safety, and welfare by extending the public trust only to those persons with proven qualifications.' . . . In Massachusetts, there are two categories of licenses to carry firearms – Class A and Class B . . . Each type of license may be issued by a 'licensing authority,' defined as 'the chief of police in a city or town, or persons authorized by them [] . . . The Class A license, which is the focus of this case, authorizes the holder to possess and carry 'firearms, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper.' . . . In the absence of a restriction, [a Class A license] does not prohibit the possession or carrying of a concealed firearm in public. . . ." *Chardin v. Police Comm'r of*

*Boston*, 989 N.E.2d 392, 394-395, 465 Mass. 314, 315-316 (2013) (citations and internal footnotes omitted).

A person may be disqualified statutorily from obtaining a license to carry for a number of reasons, including any conviction for a violent crime, certain weapons-related convictions, a conviction for a misdemeanor crime of domestic violence, mental health or substance abuse commitments, or the existence of an active restraining order. *See* G. L. c. 140, § 131(d). Beyond the statutory disqualifiers, the statutory scheme "requires that the licensing authority ascertain whether an applicant is a 'suitable person' to carry firearms and has a proper purpose for carrying a firearm, and that someone who has been issued such a license remains suitable." *Chief of Police of City of Worcester v. Holden*, 26 N.E.3d 715, 724, 470 Mass. 845, 853-854 (2015)(citations omitted).[1] Conferring "'considerable latitude' or broad discretion in making a licensing decision . . ." upon a licensing authority, the suitability standard "allows licensing authorities to keep firearms out of the hands of persons who are not categorically disqualified, e.g., convicted felons, but who nevertheless pose a palpable risk that they would not use a firearm responsibly if allowed to carry in public." *Id.* at 724 (citations omitted).

---

[1] The plaintiff's license to carry application was denied in 2011. *See Am. Compl.*, p. 2. At that time, the statutory scheme itself did not provide definitional content for the meaning of "suitable person*." See Chief of Police of City of Worcester*, 26 N.E.3d at 725. Effective as of January 1, 2015, § 131(d) was amended and now reads in relevant part: "A determination of unsuitability shall be based on: (i) reliable and credible information that the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety." Mass. St. 2014, c. 284, §§ 46, 47, 111. The Supreme Judicial Court has said that, with respect to the prior version of the statute, "[o]ur decisions have served to help clarify the meaning of the term and limit the scope of discretion of a licensing authority . . . " and, in *Chief of Police of the City of Worcester*, upheld the prior "suitable person" standard from constitutional attack, including a challenge that the standard was "inherently subjective and unconstitutionally vague." 26 N.E.3d at 724-732.

3

If denied a license to carry, within ninety days of receipt of notice, an applicant may file a petition for judicial review in the state district court having jurisdiction over the city or town where the application was filed. G. L. c. 140, § 131(f). The district court then is to conduct a hearing, after which if "the court finds that there was no reasonable ground for denying, suspending, revoking, or restricting the license and that the petitioner is not prohibited by law from possessing a license, the justice may order a license to be issued or reinstated to the petitioner or may order the licensing authority to remove certain restrictions placed on the license." *Id*. The denial or action of the licensing authority is overturned only if it was "arbitrary, capricious, or an abuse of discretion." *Chardin,* 989 N.E.2d at 395-396 (citations omitted). Further appellate review thereafter is available through an action in the nature of certiorari under G. L. c. 249, § 4. *See id*. (citations omitted).

III.    **FACTUAL AND PROCEDURAL BACKGROUND.**

   **A.  The Plaintiff's Amended Complaint.**

   The Amended Complaint is 53 pages long but the overwhelming majority of it appears to consist of purported statements from various federal court decisions. *See Am. Compl.,* pp. 6-41. The conclusory legal assertions need not be credited at the motion to dismiss stage, so most of the complaint has no relevance to whether the Amended Complaint is viable. *See Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (in ruling on motion to dismiss, a court is to distinguish factual content from conclusory legal allegations and, once separated, determine if the factual content alleged is sufficient to state a claim).

   Indeed, the Amended Complaint contains little factual information bearing upon the plaintiff's perceived grievance. The plaintiff alleges that Chief Delmonte has stipulated that the plaintiff is not disqualified statutorily from possessing an LTC. *See Am. Compl.,* p. 2. The

4

plaintiff claims that he has been involved in shooting sports for a number of years, became an

"NRA certified instructor and obtained a Certificate of Competency with firearms from the

Commonwealth of Massachusetts in 1962 and have been considered somewhat of an expert in the

area of firearms since that time." *Am. Compl.*, pp. 2-3. On page forty-four of the Amended

Complaint, the plaintiff, in an "exhibits section[,]" includes a copy of his prior license to carry,

which is a Class A license. According to the plaintiff, there is no dispute that he would be eligible

to obtain a firearms identification card[2]; *see Am. Compl.*, p. 2, ¶ 7; but the plaintiff deems that

inadequate, because it is, he says, "[o]nly the [C]lass A license . . . [that] allows the license[-

]holder the ability to fully utilize [sic] his or her Second Amendment Rights." *Am. Compl.*, p. 4, ¶

10. As a result, the only type of license placed in issue through the plaintiff's action is a Class A

license. *See Hightower*, 693 F.3d at 70-71 (concluding that the plaintiff only had standing to raise

a claim as to a Class A license because the plaintiff had never applied for, been denied, or had

revoked either a Class B license or a FID card). Although the Amended Complaint contains no

causes of action designated as such, read as a whole the complaint shows that the plaintiff is

seeking to have struck down, on constitutional grounds, the Massachusetts firearms licensing

scheme because the "case by case discretionary firearms licensing laws" conflict with the Second,

and "possibly[,]" the Fourteenth Amendments; *see Am. Compl.*, p. 53; and "Delmonte's case by

case discretionary decision not to [renew the plaintiff's Class A license to carry] does not merely

burden [the plaintiff's] Second Amendment rights, it completely destroys them." *Am. Compl.*, p.

51.

---

[2] A firearms identification card "allows its holder to own or possess a firearm within the holder's residence or place of business [but] it does not allow the holder to carry the firearm to or in any other place." *Chardin*, 465 Mass. at 315 n. 5.

**B. The Record Supporting Dismissal**

While, in general, a reviewing court ought not consider materials outside the complaint at the Rule 12(b)(6) stage, it is settled that there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Gargano v. Liberty Intern. Underwriters, Inc.* 572 F.3d 45, 47 n.1 (1st Cir. 2009) *quoting Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir. 1993). The Court "may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (internal citation omitted). And when a motion to dismiss is grounded in a preclusion defense deriving from a prior judicial proceeding, this Court may take into account the record in the original action. *Andrew Robinson Intern., Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008) citing *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 183-84 (1st Cir. 2006) and *Boateng v. InterAm. Univ.*, 210 F. 3d 56, 60 (1st Cir. 2000). Also, since the defendant's argument for dismissal based on the *Rooker-Feldman* doctrine goes to this Court's jurisdiction over the subject matter of the action under Article III and Fed. R. Civ. P. 12(b)(1), *see e.g. Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 65 (1st Cir. 2008), this Court may consider matters outside the complaint in addressing that argument. *See e.g. Gonzalez v. United States*, 284 F.3d 281, 299 (1st Cir. 2002).

The following documents, all entered in the record of proceedings in the prior state court action involving the plaintiff's challenge to the denial of his LTC renewal application, are appropriate for this Court to consider. "Attachment A" is a December 14, 2011 Supplemental Memorandum in Support of Plaintiff's Petition to Obtain Judicial Review Pursuant to G. L. c. 140, § 131, filed on behalf of the plaintiff by his counsel in the Brockton District Court. This is

part of the official record of the prior proceedings, and shows the argument plaintiff made in those proceedings. "Attachment B" is the December 21, 2011 Memorandum of Decision issued by Judge McGovern of the Brockton District Court in the matter of *Laurence A. Brown v. Christopher D. Delmonte*, Brockton District Court Docket No. 1115CV1798, affirming the denial of the plaintiff's Class A LTC application. The plaintiff's complaint references the hearing in the Brockton District Court; s*ee Am. Compl.,* p. 2, and the decision is proper for this Court to consider as part of the prior record. "Attachment C" is the September 29, 2014 memorandum of decision and order on the plaintiff's motion for judgment on the pleadings in the matter of *Laurence Brown v. Christopher Delmonte, et al.*, Plymouth Superior Court Docket No. 2012-00146-A, issued by then-Superior Court judge Frank Gaziano. "Attachment D" is the February 29, 2016 Memorandum of Decision of the Appeals Court (issued under Appeals Court Rule 1:28) in *Laurence Brown v. Chief of Police of Bridgewater, et al.*, 2016 WL 768314; 46 N.E.3d 115 (2016); 89 Mass. App. Ct. 1109 (2016). "Attachment E" is the June 8, 2016 notice of denial of the application for further appellate review in *Laurence Brown v. Bridgewater Chief of Police*, Supreme Judicial Court Docket No. FAR-24183, 474 Mass. 1106 (2016). "Attachment F" is comprised of the docket entries in the Superior Court case, No. 2012-00146. All of these materials reflect the determinations made by the District, Superior, Appeals and Supreme Judicial Courts in the prior proceedings.

### C. The State Court Proceedings

The Amended Complaint asserts that, in 2011, the plaintiff applied for a renewal of his LTC and that, in September, 2011, the application was denied by Chief Delmonte based upon a determination that the plaintiff was unsuitable. *See Am. Compl.,* p. 2, ¶6. The Amended Complaint also references a December, 2011 hearing in the Brockton District Court; *see Am.*

*Compl.*, p. 2, ¶ 7, reflecting plaintiff's petition for judicial review of Chief Delmonte's decision, under G. L. c. 140, § 131. *See* Attachments A, B. Plaintiff's filings in the District Court argued among other things, that the denial of the plaintiff's "license to carry firearms is a violation of the Second Amendment and the Due Process Clause of Article XIV of the Constitution of the United States of America." *See* Attachment A, pp. 2; *see also* Attachment A, pp 6-10 (presenting legal argument on the alleged constitutional violations). Following a hearing and consideration of the testimony presented, on December 21, 2011, the District Court issued a memorandum of decision affirming the denial of the Class A LTC a firearm application. *See* Attachment B.

The plaintiff then sought further review through a certiorari action in the Superior Court. *See* Attachment C. In the Superior Court, the Commonwealth of Massachusetts, represented by the Office of the Attorney General, was allowed to intervene as a defendant, to defend the constitutionality of the firearms laws. *See* Attachment F. The Superior Court heard argument and based on the record made in the District Court, in a decision dated September 29, 2014, the Superior Court concluded that Chief Delmonte's decision was neither arbitrary nor capricious, and ordered that the plaintiff's motion for judgment on the pleadings be denied. *See* Attachment C, pp. 1, 8. The Superior Court considered, and rejected, the plaintiff's argument that the denial of his application violated the plaintiff's Second Amendment rights. *See* Attachment C, p. 7.

The plaintiff appealed the Superior Court judgment to the Appeals Court. *See* Attachment D. On February 29, 2016, the Appeals Court issued a Rule 1:28 decision affirming the Superior Court judgment, explaining that a person may be found unsuitable for various reasons, including conduct that does not constitute an enumerated disqualifier or a criminal conviction and, based on the numerous incidents in Brown's record, despite his innocent explanations, the Chief had reasonable grounds for his finding and did not act arbitrarily or capriciously. *See* Attachment D,

p. 2.  The Appeals Court also considered, and rejected, the plaintiff's Second Amendment

argument.  *See* Attachment D, p. 2.   The plaintiff sought further appellate review from the

Supreme Judicial Court and, on June 8, 2016, the Supreme Judicial Court denied the plaintiff's

application.  *See* Attachment E.

## IV.    ARGUMENT

### A.  The Allegations in the Amended Complaint Do Not Demonstrate Any Entitlement to Relief.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of actions

which "fail to state a claim upon which relief can be granted."  In testing the legal sufficiency of

the pleading, the complaint is to be construed in the light most favorable to the plaintiff, that is, all

well-pleaded facts are to be taken as true and the plaintiff is given the benefit of all reasonable

inferences that may be drawn from the factual allegations.  *See Cooperman v. Individual, Inc*.,

171 F.3d 43, 46 (1st Cir. 1999); *see also Figueroa v. Rivera,* 147 F.3d 77, 80 (1st Cir. 1998).  In

this inquiry, the Court is to evaluate whether the factual allegations in the operative pleading

"possess enough heft" to set forth a "plausible entitlement to relief."  *Gagliardi v. Sullivan*, 513

F.3d 301, 305 (1st Cir. 2008) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Dismissal under Fed. R. Civ. P. 12(b)(1) is proper where the facts concerning jurisdiction are

undisputed and the pleadings establish that the federal court lacks subject matter jurisdiction over

the claims presented.  *See Valentin v. Hospital Buena Vista*, 254 F.3d 358, 362-363 (1st Cir.

2001).

"In resolving a motion to dismiss, a court should employ a two-pronged approach.  It

should begin by identifying and disregarding statements in the complaint that merely offer "legal

conclusion[s] couched as fact[]" or "[t]hreadbare recitals of the elements of a cause of action."

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (brackets in original; internal

quotations and citations omitted).  If the remaining factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility . . . The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Id.* (citations and internal quotations omitted).  Here, the allegations in the Amended Complaint do not demonstrate that the plaintiff is entitled to any relief.

**B      The *Rooker-Feldman* Doctrine Bars the Plaintiff's Amended Complaint.**

The *Rooker-Feldman* doctrine, as an issue of subject matter jurisdiction, prevents a federal court's exercise of jurisdiction "over cases brought by 'state court losers' challenging state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam).[3]  What is essential to the doctrine applying to bar the District Court's jurisdiction is that the state court's proceedings be final.  Conversely, the bar does not apply if the plaintiff "plainly has not repaired to federal court to undo the [state court] judgment." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 293 (2005).  For purposes of application of the doctrine, the First Circuit has said that state proceedings have ended at least "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved . . ." *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005).  A federal court suit commenced after that would plainly have the objective of undoing the state court's adverse judgment.

_____

[3] The doctrine takes its name from *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-416 (1923) (Congress authorized only the Supreme Court to exercise appellate authority "to reverse or modify" a state court judgment; federal district courts, whose jurisdiction is "strictly original," lack jurisdiction to do so) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (a federal district court has "no authority to review final judgments of a state court in judicial proceedings").

Here, the plaintiff filed his Amended Complaint, naming the Attorney General (and removing the original defendants) in this federal action on November 14, 2016. *See* Am. Compl. The Supreme Judicial Court had earlier issued its denial of his application for further appellate review on June 8, 2016. *See* Attachment E. Accordingly, for *Rooker-Feldman* purposes, the state proceedings had ended at the time of the filing of the Amended Complaint against the Attorney General. It is true that the plaintiff filed his original complaint against the Brockton District Court and Chief Delmonte before the Supreme Judicial Court issued its order denying further review. But by filing an Amended Complaint that removed both previous defendants and added a new defendant, the Attorney General, the plaintiff essentially initiated a new lawsuit. Indeed, the Amended Complaint "became the operative pleading by operation of law *before* any jurisdictional challenge was mounted," "supersed[ing] and replac[ing] the original complaint." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 95, 96 (1st Cir. 2008) (emphasis in original). Under these circumstances, where the Amended Complaint was filed after the state courts' actions were final and where plaintiff plainly asks this Court to overturn the adverse state court judgments, *Rooker-Feldman* fully bars the complaint.

### C. Preclusion Principles Require the Complaint be Dismissed.

Even if, here, "*Rooker-Feldman* is not triggered," "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Exxon Mobil Corp.,* 544 U.S. at 292, 293. The plaintiff's Amended Complaint complains that the 2011 denial of his LTC by Delmonte was in error and that this Court must right the constitutional wrong. *See generally Am. Compl.* The plaintiff both broadly raises a facial challenge to the Massachusetts firearms licensing scheme on the grounds that the "case by case discretionary firearms licensing laws" conflict with the Second Amendment and, "possibly[,]" the Fourteenth Amendments; *see*

*Am. Compl.*, pp. 51, 53; and advances an as-applied constitutional challenge, arguing that "Delmonte's case by case discretionary decision [not to renew the plaintiff's Class A LTC] does not merely burden [the plaintiff's] Second Amendment rights, it completely destroys them." Am. Compl., p. 51. Ultimately, the whole of the plaintiff's Amended Complaint complains that Chief Delmonte's denial of the LTC was improper and constitutionally illegitimate. *See generally Am. Compl.* Given that the plaintiff, however, is precluded from attempting here to relitigate what he earlier has fought and lost in state court, and that the issues raised here are identical to those raised in the state courts, the Amended Complaint should be dismissed.

"Under federal law, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which judgment was entered.'" *Sutliffe v. Epping School Dist.*, 584 F.3d 314, 326 (1st Cir. 2009) (citations omitted); *see also Giragosian v. Ryan*, 547 F.3d 59, 63 (1st Cir. 2008), <u>cert</u>. <u>denied</u>, 556 U.S. 1184 (2009) ("Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered.") (Citations omitted).

In Massachusetts two sorts of preclusion flow from prior litigation: claim preclusion and issue preclusion, both encompassed within the term *res judicata*. *Kobrin v. Bd. of Registration in Medicine*, 832 N.E.2d 628, 634, 444 Mass. 837, 843 (2005). "*Res judicata*, in its claim preclusion aspect, is intended to prevent the re-litigation of claims already litigated or that should have been litigated in an earlier action; in its issue preclusion aspect, it prevents (with qualifications) re-litigation of issues earlier decided even if the subsequent case involves a different claim." *Iantosca v. Step Plan Servs., Inc.*, 604 F.3d 24, 30 (1st Cir. 2010) (citation omitted).

'Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action.' . . . The invocation of claim preclusion requires three elements: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.' . . . Similarly, issue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.' . . . Before precluding a party from relitigating an issue, 'a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication.' . . . 'Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment . . . [and] actually litigated in the prior action.

*Kobrin*, 444 Mass. at 843-44 (citations omitted).

Here both principles apply to preclude the plaintiff's constitutional challenge to the Massachusetts firearms licensing scheme.[4] Beginning with claim preclusion, all three elements are satisfied on this record. The identity of the parties, namely the plaintiff and the Attorney General, are the same in both the prior and present actions. *See* Attachments A-E. Given that the Attorney General intervened in the Superior Court, on behalf of the Commonwealth, to defend the constitutionality of the suitability standard, and given that the Attorney General is named here as the representative of the Commonwealth, the defendant too is the same party here and in state court.

---

[4] Even though Brown's claims were rejected by the Superior Court, the Appeals Court, and the Supreme Judicial Court, the state District Court's judgment alone sufficed to trigger preclusion. *See* Attachment B. *See O'Brien v. Hanover Ins. Co*., 692 N.E.2d 39, 44, 427 Mass. 194, 200-201 (1998) (expressing agreement with the federal rule, followed by a majority of states, that a judgment by a lower court is considered final for preclusion purposes even while on appeal); s*ee also Fire Ins. Exchange v. Pring-Wilson*, 831 F. Supp.2d 493, 500 (D. Mass. 2011) (collecting authorities and applying Massachusetts law).

13

Second, the causes of action, in the plaintiff's constitutional attack on the denial of his LTC, are identical. *See* Attachments A-E. "Massachusetts deems causes of action identical for claim preclusion purposes if they grow out of the same transaction, act, or agreement, and seek redress for the same wrong." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co*., 547 F.3d 48, 52 (1st Cir. 2008) (internal quotations and citation omitted). Moreover, "[d]iscrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based upon the same nucleus of operative facts." *Id.* Facts with a common nucleus "are those meeting the following criteria: 1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations." *Herman v. Meiselman*, 541 F.3d 59, 62-63 and 62 n.6 (1st Cir. 2008) (internal quotations omitted). Here, the operative facts do not just share a common nucleus: they are completely and entirely the same and the plaintiff's claim here, as it was in state court, grows out of the same transaction, namely, the denial of his LTC, and seeks redress for the same wrong, namely, that denial. And, he raised both a facial and as-applied constitutional challenge in both jurisdictions.

Third, there was a prior final judgment on the merits when this action was initiated; *see O'Brien*, 427 Mass. at 200-201; and there is a complete end to the state court proceedings since the Supreme Judicial Court has denied further appellate review. *See* Attachment E.

As has been noted, the plaintiff specifically raised his constitutional challenge in the state court proceedings at multiple levels of review; *see* Attachment A, pp. 2, 6-10 (advancing constitutional challenge); *see also* Attachments C and D; and that very claim was rejected by each court, including explicit rulings by the Superior Court and Appeals Court. *See* Attachment C, pp. 7-8; *see also* Attachment D, p. 2. Accordingly, those rejections of the argument in prior judicial

proceedings terminate the claim here as a matter of law.  For claim preclusion purposes, it matters

not that the plaintiff sought different remedies in the two actions; claims are to be treated as

substantively related if they rest fundamentally on common operative facts; *see Bradford v.*

*Richards*, 417 N.E.2d 1234, 1236, 11 Mass. App. Ct. 595, 599 (1981); and a "party cannot avoid

the rule by attempting to relitigate a claim 'from a different posture or in a different procedural

form.'"  *Dowd v. Morin*, 471 N.E.2d 120, 126, 18 Mass. App. Ct. 786, 794 (1984) (citations

omitted).  Claim preclusion "extinguish[es] a claim even though the plaintiff is prepared in the

second action to present evidence, grounds, or theories of the case not presented in the first action

or to seek remedies or forms of relief not demanded in the first action."  *Boyd v. Jamaica Plain*

*Co-op Bank*, 386 N.E.2d 775, 781, 7 Mass. App. Ct. 153, 163 (1979), cited with approval in

*Massaro v. Walsh*, 884 N.E.2d 986, 990, 71 Mass. App. Ct. 562, 565-66 (2008).  Claim

preclusion applies to bar the plaintiff's action here.

For the same reasons, issue preclusion also prevents the plaintiff from trying to relitigate

the prior determinations that the denial of his application, and the laws applicable, were

constitutional.  First, there is a final judgment on the merits in the prior adjudication.  *See*

Attachments B, C, D and E.  Second, the plaintiff, the party against whom preclusion is being

asserted, was a party to the prior adjudication.  *See* Attachments A-E.  Third, the issue in the prior

adjudication, namely, the constitutionality of the denial of the plaintiff's LTC, and the

constitutionality of the firearms laws' suitability test, is the same presented here; *compare*

Attachment D (Appeals Court decision; describing "[t]he principal argument in Brown's appellate

brief [a]s that the Massachusetts licensing scheme violates" the Second Amendment) *with* Am.

Compl. (advancing the same theory); and was essential to the earlier judgment, given that, if the

District, Superior, or Appeals Courts, or the Supreme Judicial Court, had determined the action

taken against the plaintiff to be unconstitutional, the action taken by Chief Delmonte could not have been affirmed; indeed, the Superior and Appeals Courts specifically concluded otherwise. See Attachments C and D. Lastly, as the record shows, this issue actually was litigated, and lost, by the plaintiff in the state court proceedings. See Attachments A-E. Issue preclusion requires no more.

### D. The Defendant's Sovereign Immunity Under the Eleventh Amendment Bars Plaintiff's Lawsuit.

Under the Eleventh Amendment to the United States Constitution, sovereign immunity bars this lawsuit against the Massachusetts Attorney General from being brought in federal court. *Rosie D. v. Swift*, 301 F.3d 230, 234 (1st Cir. 2002). Whether brought against the state itself or a state official in her official capacity, an unconsenting state defendant has immunity from suit in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Indeed, any federal court lawsuit "in which the State or one of its agencies is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000).

There are two exceptions to a State's Eleventh Amendment immunity: first, "Congress may abrogate a State's immunity by expressly authorizing such a s suit pursuant to a valid exercise of power," and second, "a State may waive its sovereign immunity by consenting to be sued in federal court." *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 49 (1st Cir. 2003). Neither exception applies here.

Plaintiff has not relied on any statute in which Congress expressly authorizes a suit against the Commonwealth or its Attorney General. He only cites 28 U.S.C. § 1331 as giving the District Court jurisdiction. This statute only gives the District Court federal question jurisdiction; it does

not abrogate any state's immunity by expressly authorizing a suit in federal court.[5]  Moreover, the Commonwealth has not consented to Brown's lawsuit.

Brown may counter, however, that he has not sued the Commonwealth of Massachusetts but the Attorney General in her official capacity.  In this case, this is a distinction without a difference.

It is true that "[t]he Eleventh Amendment is not a bar to the naming of a state official, rather than the state or agency, as a defendant."  *Baker*, 201 F.3d at 47.  A state official can be named as a defendant in one of two ways.  First, a plaintiff may name a state official in his or her individual capacity to recover damages.  *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 108 (1st Cir. 2015); *Morgan v. Middlesex Sheriff's Office,* No. CA 14-10659-IT, 2014 WL 4104173, at * 4 (D. Mass. Aug. 13, 2014).  But here, plaintiff has not stated a claim for damages against the Attorney General.  *See Am. Compl.*  Nor could he.  "In order to properly bring a claim under 42 U.S.C. § 1983 [which plaintiff has not cited] against an individual defendant, a party must allege personal involvement of the defendant in the purported constitutional violation."  *Morgan*, 2014 WL 4104173, at * 4; *see also Greene v. Cabral*, No. CV-12-11685-DPW, 2015 WL 4270173, at * 8 (D. Mass. July 13, 2015) (for individual capacity claims, "the plaintiff must show that the defendant had a direct connection to the misconduct").  Here, plaintiff has failed to allege any involvement by the Attorney General in Chief Delmonte's decision nor, as a matter of fact, could he ever.  The Attorney General had no role in the Chief's decision-making regarding plaintiff's firearm license and only appeared in the Superior Court, through an Assistant Attorney General,

---

[5] The same goes for suits under 42 U.S.C. § 1983, which Brown has not cited in his Amended Complaint, but which nonetheless does not abrogate state immunity.  *Soares v. Mass. Dep't of Youth Servs.*, No. Civ. A. 12-10573-DJC, 2013 WL 5211556 at *3 (D. Mass. Sept. 12, 2013) citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

to represent the Commonwealth in defending against plaintiff's claims that the firearms law is facially unconstitutional (the Chief having his own counsel).

Secondly, a state official may be named in the officer's official capacity in a suit for prospective declaratory judgment or injunctive relief under federal law. *Mills v. Maine*, 118 F.3d 37, 53 (1st Cir. 1997); *see also Johnson v. Patrick*, No. Civ. A. 09-11543-RGS, 2011 WL 2669067, at *2 (D. Mass. July 7, 2011) ("While the Eleventh Amendment prevents the bringing of a suit against a state in federal court, it does not prohibit suits against State officers acting in their official capacity when a party seeks prospective equitable relief from a continuing violation of federal law"). Allowing such a suit is intended "to prevent continuing violations of the federal law, but not to remedy past violations." *Greenless v. Almond*, 277 F.3d 601, 607 (1st Cir. 2002). This exception, allowed by *Ex Parte Young*, is a "narrow" one. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). It permits suits against state officials in their official capacities for "prospective injunctive relief" only, *Rosie D. v. Swift*, 310 F.3d at 234, permitting only "injunctive relief to prevent a continuing violation of federal law," *Green v. Mansour,* 474 U.S. 64, 68 (1985). Here, the Attorney General is not properly named because the Attorney General has no statutory role to play in making suitability decisions under G. L. c. 140, § 131. Rather, those decisions are made by local licensing authorities without any involvement of the Attorney General. *Id.* An injunction against the Attorney General will have no effect on implementation of the suitability standard and nothing the Attorney General may do will threaten future harm in this respect. The Amended Complaint is barred on this score as well.

### E.  The Plaintiff's Claims Are Foreclosed by Precedent.

Finally, although jurisdictional bars and preclusion principles compel the dismissal of the complaint, First Circuit law directly contrary to plaintiff's claims also counsel dismissal. The

language of the Amended Complaint appears to encompass both a facial challenge to the firearms licensing scheme and an as-applied challenge. *See Am. Compl.*, p. 49 (referencing application of the state firearms licensing laws as having "destroy[ed]" the plaintiff's Second Amendment rights); *see also* Am. Compl. pp. 52-53 (asserting broad conflict between the Massachusetts firearms licensing scheme, especially the suitability standard, and the federal constitution).

In *District of Columbia v. Heller*, 554 U.S. 570, 579 (2008), the United States Supreme Court held that the Second Amendment "codifies a 'right of the people'" as individuals "to possess and carry weapons in case of confrontation" in defense of "hearth and home." The Court also observed that "[l]ike most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626 (citations omitted). By way of example, the Court noted that "the majority of 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* (citations omitted). Striking down an outright ban on any possession of handguns, the Supreme Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions" related to weapons, with the Court providing a non-exhaustive list of examples of such legitimate bans. *Id.* at 626-27 and n.26.

Since *Heller*, the Supreme Judicial Court has considered "a challenge under the Second Amendment to the United States Constitution[] to the constitutionality of the 'suitable person' standard in G. L. c. 140, § 131 . . . " *Chief of Police of the City of Worcester*, 470 Mass. at 847. There, the Supreme Judicial Court considered the constitutionality of the suitable person standard not in the context of the statutory revision specifically defining the term "suitable person," that

took effect as of January 1, 2015; *see id* at 855 and n.8; but rather the constitutionality of the standard as it previously existed statutorily, the same standard that governed the 2011 denial of the plaintiff's license at issue here.  In a lengthy and well-reasoned analysis, the Supreme Judicial Court took the reference in *Heller* to "prohibitions on carrying concealed weapons" as an example of a regulation that was "presumptively lawful . . ." and concluded that, "[b]ecause a *prohibition* against carrying concealed weapons is presumptively lawful, it follows that licensing the carrying of such weapons, a less restrictive measure, also must be presumptively lawful."  *Chief of Police of the City of Worcester*, 470 Mass. at 852-853 (citations omitted; italics in original).  The Supreme Judicial Court, in response to a claim of vagueness, concluded that the license there was taken "based not on a generalized, subjective determination of unsuitability, but on specific and reliable information" that the license-claimant had assaulted and beaten his wife, *id* at 854-856.[6] The court there determined that the suitable person standard passed constitutional scrutiny, rejecting a facial challenge to its validity.  *Id* at 856-64.

To the extent that the plaintiff makes a facial challenge to the Massachusetts firearms licensing scheme, he would need to establish that there are "no set of circumstances" under which the suitability standard would be valid, or that it lacks "any 'plainly legitimate sweep.'"  *Lovering v. Massachusetts*, 2016 WL 2977261, *3 (D.Mass. May 20, 2016).  The success of such a claim is highly improbable, however, given that both the Supreme Judicial Court in *Chief of Police of the*

---

[6] As in Brown's case, in *Chief of Police of the City of Worcester*, the license-claimant had been charged criminally but the charge was later dismissed; the decision of the Chief that was before the Supreme Judicial Court, and which was approved by the Court, was that it was the credible information in the police report, not the mere existence of a criminal charge, that formed the basis for the unsuitability determination.  470 Mass. 848-49.  Here, Superior Court Justice Gaziano upheld the same type of reasonable reliance on specific and credible information in reports that justified Chief Delmonte's unsuitability determination here.  *See* Attachment C.

*City of Worcester*, 470 Mass. 845, and the First Circuit Court of Appeals in *Hightower,* 693 F.3d 61, have determined that the suitable person standard, as it existed prior to the statutory revision effective on January 1, 2015, (that is, the same standard applied to the plaintiff's application denial here), was constitutional. *Lovering*, **3,4. In *Hightower*, the First Circuit determined that the suitability standard did not confer too much discretion upon licensing authorities for constitutional purposes and was sufficiently tethered to valid governmental interests to render it legitimate and, because the plaintiff "has not shown that the statute lacks any plainly legitimate sweep, her facial attack fails." *Hightower,* 693 F.3d at 71-83. In *Lovering*, this Court (Burroughs, J.) also noted the First Circuit's admonition that "any individual right 'in carrying concealed weapons outside the home is distinct from [the] core interest emphasized in *Heller*,' '[l]icensing of the carrying of concealed weapons is presumptively lawful.'" *Lovering*, *3 and n.5 citing *Powell v. Tompkins*, 783 F.3d 332, 348 (1st Cir. 2015), <u>cert. denied</u>, 136 S. Ct. 1448 (2016).

The plaintiff's facial challenge must fail because there is a plainly legitimate sweep to the suitability standard, as the First Circuit and the Supreme Judicial Court have already concluded. Moreover, the plaintiff is challenging the denial of his application for a Class A LTC, a license which is the most comprehensive license available and can permit its holder to carry loaded, high-capacity firearms in public. The plaintiff appears to only be content with that specific licensure because, according to him, only that license "allows the license holder the ability to fully utilize his or her Second Amendment rights." *Am. Compl.*, p. 4, § 10. However, the First Circuit, on two occasions post-*Heller*, has said that a grant of permission related to concealed weapons may reside *outside* the scope of the Second Amendment. *See Powell v. Tompkins*, 783 F.3d at 348. (The Supreme Court has not said that "*publicly* carrying a firearm unconnected to defense of

hearth and home and unconnected to militia service is a definitive right of private citizens protected under the Second Amendment"); *see also Hightower*, 693 F.3d at 72-74 (collecting cases noting that the "core" of the Second Amendment as recognized in *Heller* is possession of a firearm for home defense and that licensing the carrying of concealed weapons is presumptively appropriate. In fact, *Hightower* expressly held that "[l]icensing of the carrying of concealed weapons is [a] presumptively lawful . . ." governmental endeavor. 693 F.3d at 73-74.

And, *just as in Hightower* and *Chief of Police of City of Worcester*, plaintiff's as-applied challenge does not come with a license denial based on a generalized finding of unsuitability, but rather against the backdrop of a particularized and individual finding, based upon specific and credible evidence, showing that, in his history of exercising poor judgment, the plaintiff is not a suitable person to be licensed to carry a firearm. (*See* Attachments B, C, and D for descriptions of the incidents upon which Chief Delmonte's decision was based.) *See Hightower*, 693 F.3d at 74 ("Hightower's license was not revoked because of a general finding that she was not 'suitable,' but rather because of a particular determination that she completed the application form untruthfully"); *see also Chief of Police of the City of Worcester*, 470 Mass. at 856 ("Holden's license was revoked, and his application for renewal of his license was denied, based not on a generalized, subjective determination of unsuitability, but on specific and reliable information that he had assaulted and beaten his wife").

So just as in *Hightower* and *Chief of Police of City of Worcester*, Chief Delmonte's decision, upheld at every level of judicial review available in the state court system, was not based upon any generalized and amorphous notion of suitability, but on specific, reliable and credible information that the Chief was well within the bounds of his authority and discretion to consider and to act upon. *See, e.g.*, Attachments C and D. Thus, the plaintiff's as-applied

challenge to the constitutionality of the suitable person standard must fail because he has not discharged his burden to set forth sufficient factual allegations in the operative pleading that "possess enough heft" to set forth a "plausible entitlement to relief." *Gagliardi*, 513 F.3d at 305 (citation omitted).

## **CONCLUSION**

For all of the above reasons, this Court should dismiss the Amended Complaint with prejudice.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

/s/ David R. Marks

_____
David R. Marks, BBO No. 548982
Assistant Attorney General
Office of the Attorney General
One Ashburton Place, Room 2019
Boston, MA 02108-1698
(617) 963-2362
Facsimile:  (617) 727-5785
Date:  January 31, 2017               david.marks@state.us.ma

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system, with copies sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and that a paper copy will be mailed by first class mail, postage prepaid, to non-registered participants on January 31, 2017.

/s/ David R. Marks
_____

David R. Marks
Assistant Attorney General

January 31, 2017

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I contacted the plaintiff in an attempt in good faith to resolve or narrow the issue.

/s/ David R. Marks
_____

David R. Marks
Assistant Attorney General